JESSIE WORRELL, Appellee, *vs.* ANGELINE TORRANCE *et al.* Appellants.

*Opinion filed October 26, 1909.*

1. WILLS—*when certain heirs of testator take equal shares under codicil.* Where a codicil to a will provides that certain named children of the testator shall have the use, for life, of an undivided interest owned by the testator in certain land, and that at their deaths "the remainder of the proceeds of the above described premises, if any, shall be equally divided between my other legal heirs or their descendants," the children of the testator and the daughter of a deceased child take the fee in such undivided interest in equal shares, subject to the life estate in the children named.

2. TRUSTS—*cestui que trust may pursue proceeds of trust property.* A *cestui que trust* may pursue the proceeds of trust property, and charge with the original trust, property in which the proceeds of the trust property have been invested.

3. SAME—*when widow holds title in trust for heirs.* Where a quarter section of land in which a testator owned an undivided one-third interest is purchased by the widow at a partition sale, the widow and her heirs giving a receipt to the master for the value of such one-third interest and the widow giving her note for

the other two-thirds, the widow holds the title to such one-third interest in trust for those heirs of the testator to whom the fee therein was devised by his will.

4. SAME—*when widow does not hold certain interest in trust.* Where the entire tract of land in which the testator owned an undivided one-third interest is bid in by the widow, who gave her individual note and mortgage for two-thirds of the purchase price, and the note is afterwards paid and the mortgage released, it can not be presumed, in the absence of any competent evidence, that the note was paid with money derived from the sale of a farm in which the heirs of the testator owned the fee, and in such case she must be regarded as holding such two-thirds interest in her own right and not in trust for such heirs.

5. WITNESSES—*when complainant and defendants in partition cannot testify against each other.* Where the complainant in a partition suit claims an interest in an undivided two-thirds of the land as an heir of her grandmother, who held the legal title, and the defendants claim the whole of the two-thirds interest as heirs and devisees of their father, neither party can testify against the other's interests, and the defendants cannot testify that the land was purchased by the complainant's grandmother with money derived from the sale of the farm in which defendants owned the fee under their father's will.

APPEAL from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding.

C. B. ADAMS, for appellants.

O. J. BOYER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellee, Jessie Worrell, against the appellants, Angeline Torrance, William H. Blackaby, Emma Blackaby, Cora Cluts, Sidney I. Blackaby, Albert B. Blackaby and Ethan A. Blackaby, appellants, in the circuit court of Fulton county, for the partition of the south-east quarter of section 35, in township 6, north, range 3, east of the fourth principal meridian, Fulton county, Illinois. An answer and replication were filed and the cause was heard in open court, and a decree was

242 — 5

entered finding the parties to the suit to each be the owner in fee of an undivided one-eighth part of said premises, and ordered that a partition and division thereof be made between the parties and for other relief, and the defendants have prosecuted an appeal to this court.

It appears from the record that Inman Blackaby died testate on the sixth day of December, 1898, leaving Julia P. Blackaby as his widow, and the appellants and Elizabeth A. Blackaby and Valonora Blackaby as his sons and daughters, and the appellee, a daughter of a deceased son, as his grand-daughter, his sole and only heirs-at-law; that his daughters Elizabeth and Valonora died subsequent to the death of their father, unmarried and childless, and that the widow, Julia P. Blackaby, died intestate on January 19, 1907. By his last will Inman Blackaby gave his widow, Julia P. Blackaby, the use of his entire estate during her natural life, with the power to lease, mortgage, sell and convey his real estate at her discretion, and provided upon her death the remainder of his estate, except the home farm, be sold, and after the payment of $500 to the appellee, which should be "her share," the proceeds should be equally divided among his legal heirs or their descendants, except the appellee, "who is already provided for." By a codicil attached to his will he provided that for the better support of his children Elizabeth A., Valonora and Albert B., they should have, during their natural lives, the use of an undivided one-third of the premises now sought to be partitioned, and provided that upon the death of said children "the remainder of the proceeds of the above described premises, if any, shall be equally divided between my other legal heirs or their descendants." By the will he named his sons Sidney I. and Ethan A., and his daughter Emma A., executors, and by the codicil his sons William H. and Ethan A. executors. At the time of his death Inman Blackaby owned a farm of one hundred and sixty acres in Hancock county, and a farm of one hundred and eighty acres and a farm of

twenty acres, upon which he lived, in Fulton county, and a store building in the city of Canton, and an undivided one-third of the premises in controversy in fee simple.

The will of Inman Blackaby was admitted to probate and the executors qualified, but no further steps appear to have been taken to administer upon his estate, but the widow, Julia P. Blackaby, in connection with his children, appears to have taken possession of the estate and handled it as they thought was for the best interest of the estate, thinking, evidently, it belonged to them jointly, subject only to the payment of the $500 legacy to the appellee, which legacy they paid in cash on March 26, 1905. A partition suit for the division of the land in controversy was pending at the time of the death of Inman Blackaby or was soon thereafter commenced, with a view to sever the undivided one-third interest of Inman Blackaby therein from the balance of the farm, in which a decree of sale of the entire quarter-section was entered and the farm was sold. At the time of the sale the land was struck off upon a bid of $7100 made by the solicitor who had theretofore represented the widow and Blackaby heirs in the partition suit for a division of the land, and a master's deed was made to Julia P. Blackaby for the farm. The one-third part of the purchase money was receipted for to the master in chancery by Julia P. Blackaby and the Blackaby heirs other than the appellee, and a mortgage was placed on the land by Julia P. Blackaby for a sufficient amount to pay the master in chancery the balance due upon the deed made at said master's sale. Julia P. Blackaby immediately took possession of the farm after the master's sale and held possession thereof until her death. After her death this bill was filed.

It is undisputed that one-third of the premises sought to be partitioned was the property of Inman Blackaby at the time of his death, and by the codicil to his will the proceeds, if any, of said one-third interest were given to his legal heirs or their descendants, subject to the use thereof

given to Elizabeth A., Valonora and Albert B. Blackaby during their natural lives. When the land was sold and the title was conveyed by the master to Julia P. Blackaby, Julia P. Blackaby paid no money to the master for that one-third interest, but she and the heirs of Inman Blackaby other than the appellee receipted to him for one-third of the bid made at the master's sale. Julia P. Blackaby, by said purchase and master's deed, therefore took title to said one-third interest, and in equity held the same in trust for the legal heirs, or their descendants, of Inman Blackaby, subject to the life use of Albert B. Blackaby therein, his sisters Elizabeth A. and Valonora being then dead, and the appellee, Jessie Worrell, being one of the legal heirs of Inman Blackaby, deceased, took a one-eighth interest in said premises, subject to the life interest therein of Albert B. Blackaby. This was the holding of the court below. We find no error, therefore, in the decree of the circuit court as to the original one-third of said premises which was in Inman Blackaby at the time of his death. As to that third of said premises Julia P. Blackaby, at the time of her death, held the same in trust for the benefit of the legal heirs of Inman Blackaby, deceased,—that is, for the benefit of the appellee and the appellants,—subject to the life use therein of Albert B. Blackaby, which interest of Albert B. Blackaby was fully protected by the decree entered below.

The law is well settled in this jurisdiction that the *cestui que trust* may pursue the proceeds of trust property and charge with the original trust any property in which the proceeds of the trust property have been invested. *Breit* v. *Yeaton,* 101 Ill. 242; *Sholty* v. *Sholty,* 140 id. 81; *White* v. *Sherman,* 168 id. 589; *Heintz* v. *Dennis,* 216 id. 487.

As to the two-thirds of said land which had not prior to the master's sale belonged to Inman Blackaby, the evidence shows that Julia P. Blackaby borrowed the money with which she paid the master therefor, of F. A. Cobleigh, and gave him her note, secured by a mortgage on the prem-

ises purchased by her, to secure the payment thereof, and that subsequently thereto the note was paid and the mortgage was released. It is claimed by the appellants that the money borrowed by Julia P. Blackaby from Cobleigh was paid out of the proceeds of the sale of the one hundred and sixty acres of land located in Hancock county which belonged to Inman Blackaby at the time of his death. The facts of the sale of the Hancock county land and the application of the proceeds of the sale to the payment of the Cobleigh note and mortgage are established only by the testimony of Ethan A. Blackaby, Sidney I. Blackaby and Emma Blackaby, all of whom are heirs of Inman Blackaby, deceased, and the testimony of W. C. Torrance, the husband of Angeline Torrance, a daughter of Inman Blackaby, deceased. This suit was commenced by Jessie Worrell, who is claiming the one-eighth interest in said two-thirds of said premises as heir-at-law of Julia P. Blackaby, deceased, against the appellants, who are claiming said two-thirds interest, as against her, as heirs-at-law of Inman Blackaby, deceased, their contention being that said two-thirds interest was paid for out of funds derived from the sale of the Hancock county farm, and that said two-thirds of said premises was held by Julia P. Blackaby in trust for the heirs of Inman Blackaby, deceased, other than the appellee.

Section 2 of our statute on evidence provides that no party to any action shall be allowed to testify, on his own motion or in his own behalf, when the adverse party sues or defends as the heir of a deceased person. We think, therefore, that the appellee was not a competent witness as against the appellants and that the appellants were not competent witnesses as against the appellee, and that their evidence could not be used to establish that the fund derived from the sale of the Hancock county land was used to pay the note and mortgage given by Julia P. Blackaby to F. A. Cobleigh, which loan was paid by Cobleigh to the master

in chancery in satisfaction of the purchase money remaining due at the master's sale after one-third thereof had been receipted for to the master by Julia P. Blackaby and the appellants. (*Heintz* v. *Dennis, supra.*) The competent evidence, therefore, in this record, totally fails to establish that Julia P. Blackaby, at the time of her death, held the two-thirds of said premises which had been conveyed to her by said master in chancery in trust for the benefit of the legal heirs, and their descendants, of Inman Blackaby, deceased, other than the appellee, as it cannot be presumed, without proof, that said two-thirds interest was held by Julia P. Blackaby in trust and not in her own right, or that said note secured by said mortgage, which upon its face appeared to be her own debt, was paid with the funds derived from the sale of the Hancock county land, which theretofore had belonged to Inman Blackaby. It must therefore be held that said two-thirds interest in said premises belonged to Julia P. Blackaby in her own right at the time of her death, and that upon her death it descended to her heirs-at-law, who were the appellee and the appellants, in equal parts. This was the holding of the trial court.

We think, therefore, it clear from this record that the one-third part of the premises sought to be partitioned was held by Julia P. Blackaby in trust for the benefit of all the heirs (which included the appellee) of Inman Blackaby, deceased, and that the appellee was therefore the equitable owner of a one-eighth part of said one-third interest, and that Julia P. Blackaby held the other two-thirds part of said premises in her own right, and that upon her death the appellee inherited from her the one-eighth part of said two-thirds interest in said premises.

Finding no error in this record the decree of the circuit court will be affirmed.

*Decree affirmed.*