J. F. Brennan et al., Trading as Stein, Alstrin & Company, Appellees, v. J. R. Persselli, Defendant. The National Bank of the Republic of Chicago, Garnishee. M. N. Elsenau Company and Harris Trust and Savings Bank, Appellants.

Gen. No. 35,577.

Opinion filed May 17, 1932.

LORD, LLOYD & BISSELL, for appellant Harris Trust and Savings Bank; JOHN S. LORD and A. C. WETTERSTORM, of counsel.

C. L. BLANKENSHIP, for appellant M. N. Elsenau.

MOSES, KENNEDY, STEIN & BACHRACH, for appellees; WALTER BACHRACH, SEYMOUR A. GREENBLATT and PHILIP M. GLICK, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

February 14, 1931, in an action in assumpsit, appellees recovered a judgment for $24,850 against the defendant, J. R. Persselli. The action was commenced December 24, 1930, on which day an attachment in aid was issued in which the National Bank of the Republic of Chicago was made garnishee; it answered admitting an indebtedness to the defendant of $12,000 in the nature of a checking savings account, and set up that M. N. Elsenau Company and Harris Trust and Savings Bank, the appellants, both claimed some interest in the fund. The appellants filed intervening petitions, each claiming it was entitled to $11,000 of the fund. After a hearing the court dismissed the petitions of the appellants and entered judgment against the garnishee for $12,000. To reverse this judgment, M. N. Elsenau Company and Harris Trust and Savings Bank have perfected separate appeals, which were consolidated for a hearing.

The question for determination is whether $11,000 of the $12,000 admitted by the garnishee, the National Bank of the Republic of Chicago, to be owing to the defendant, J. R. Persselli, should be awarded to the appellees or to the Harris Trust and Savings Bank or to the M. N. Elsenau Company. The Harris Trust and Savings Bank claims that it is entitled to the

$11,000 on the ground that the money came from the proceeds of a loan obtained from it by the use of counterfeit stock certificates and seeks to have Persselli held as a constructive trustee of his claim against The National Bank of the Republic of Chicago, while the M. N. Elsenau Company claims that because of misrepresentations made to it as to the genuineness of said stock certificates, or because of mutual mistake as to their genuineness, it is entitled to rescind the transaction and to recover the proceeds of the $11,000 check which was deposited to the account of Persselli with the garnishee bank.

The plaintiffs will be referred to as the appellees, the Harris Trust and Savings Bank as the bank, the M. N. Elsenau Company as the Elsenau Company, and the National Bank of the Republic as the garnishee.

The undisputed material facts are that in December, 1930, the Elsenau Company was engaged in selling stocks and securities in the building in which the bank is located and was a customer of the bank, and the appellees were stockbrokers of high standing and reputation among brokers and business men in the City of Chicago; that for more than a year prior to December 16, 1930, one Gus Anders had been a customer of Elsenau Company and had purchased from it upward of three-quarters of a million dollars worth of securities; he was also a customer of appellees and had bought and sold through them as his brokers, shares of stock of many different corporations, and had always met his commitments. December 16, 1930, Anders, at the request of Persselli, agreed to purchase from Persselli 1,000 shares of Fox Film Corporation class ''A'' common stock, represented by 20 certificates for 50 shares each, for $24,000, minus a discount of $1,000; that day Anders asked Elsenau Company if it would borrow from the bank $19,000 if he delivered to the Elsenau Company the stock certificates

for said stock to be deposited with the bank as collateral; Elsenau Company agreed to make the loan from the bank if Anders delivered to it the certificates properly indorsed. December 18, 1930, without the knowledge of the appellees, Persselli delivered to Anders the 20 certificates and told him that they were certificates for 1,000 shares of Fox Film Corporation class ''A'' common stock and Anders paid Persselli $12,000; thereupon Anders indorsed each of the certificates and requested appellees to and they did guarantee his signature, believing the certificates were genuine; that Anders also believing them to be genuine delivered them to Elsenau Company, who believing them to be genuine, took them to the bank stating they were certificates for 1,000 shares of Fox Film Corporation class ''A'' common stock, and inquired if the bank would lend it $19,000 for a few days if it deposited with the bank these certificates as collateral; the bank accepted said certificates as collateral, lent Elsenau Company upon its note due January 8, 1931, $19,000, which said sum was credited to the checking account of Elsenau Company, and as a result the balance in that account then amounted to $19,572.65. This was the last deposit made by Elsenau Company in that account.

December 20, 1930, at the request of Anders, Elsenau Company issued its check for $11,000 payable to J. R. Persselli, drawn on its checking account with the bank, and gave it to Anders, who delivered it to Persselli as payment on account of his purchase of said stock certificates. December 22, 1930, Persselli indorsed this check and deposited it in his checking savings account with the garnishee, as a result of which the total deposits in his account with the garnishee amounted to $12,000. At no time thereafter did Persselli withdraw any of said $12,000. December 23, 1930, the garnishee delivered the check for $11,000 to the

bank and it was on that date paid to the garnishee and charged to the bank to the checking account of Elsenau Company.

December 24, 1930, the attachment writ was served on the garnishee. December 26, 1930, the bank learned for the first time that the certificates were forged and it made a demand on Elsenau Company to return the $19,000, and Elsenau Company demanded that Anders return the funds he had received from it. Thereupon Anders told Persselli the certificates were forged and demanded that Persselli return the $23,000 he had received from the Elsenau Company; Anders also made demands on the garnishee for the proceeds of the $11,000 check on deposit in the account of Persselli on the ground that the same had been obtained by fraud.

It was stipulated that the 20 certificates were counterfeit and wholly worthless and that the bank would not have made the loan had it known that the certificates were forged, and had they been genuine they would have had a market value of $28,000.

The claim of an attaching creditor to protection is not of equal strength with that of a bona fide purchaser for a valuable consideration. (*Schweizer v. Tracy,* 76 Ill. 345, 352.) He only obtains the rights which the debtor has in the property at the time of the levy of the writ. He does not acquire or gain any greater rights than the latter himself had. (*Welsh, Boyle & Co. v. First Nat. Bank,* 228 Ill. 446, 449; *Mattoon Grocery Co. v. Stuckemeyer & Olson,* 326 Ill. 602, 605.) He parts with nothing in exchange for the property, nor does he take it in satisfaction of any precedent debt. The property is merely seized for the purpose of having it afterward so appropriated. He obtains but a lien (*Schweizer v. Tracy,* 76 Ill. 345, 351), and his lien does not exceed the actual interest the debtor had in the property at the time of the levy. It does

not displace prior equities or rights to which the property was liable in the debtor's hands. (*Wilson v. Kruse,* 270 Ill. 298, 301.) An attaching creditor is clothed with no greater rights than the debtor himself; he stands in the shoes of the debtor. (*Marble Co. v. Merchants' Nat. Bank,* 15 Cal. App. 347, 350.) Under paragraph 29, ch. 11, Cahill's Ill. Rev. St. 1931, page 148, any person, other than the defendant, claiming the property attached, may interplead, and such interpleader is entitled to all the relief he could have obtained had he filed a bill in equity, and his equitable rights will be fully protected in such proceeding. (Paragraph 24, ch. 62, Cahill's Ill. Rev. St., 1931, page 1545; *Newman v. Commercial Nat. Bank,* 156 Ill. 530, 539; *LaSalle Opera House Co. v. LaSalle Amusement Co.,* 289 Ill. 194, 199; *Inderrieden Co. v. United States Nat. Bank of Newberg,* 176 Ill. App. 301, 304.)

In arguing for a reversal the bank contends that because Persselli, Anders and Elsenau Company all unequivocally stated the certificates were for 1,000 shares of Fox Film Corporation class "A" common stock, they thereby represented they knew this to be true, and since the certificates were counterfeit, the representation is false, and constitutes actual fraud. Counsel for appellees, however, contend that the representations as made by the Elsenau Company do not constitute any species of fraud and cannot serve to construct any equity in favor of the bank, and in their argument state that where one makes a statement and honestly believes it to be true, under circumstances where he has no intent to deceive, and was himself warranted as a reasonable man in believing the statement to be true, he has not perpetrated a fraud on his auditor. We cannot agree with them in this contention as it has been repeatedly held that it is immaterial whether the parties making an untrue representation knew it to be false, for the reason that the affirmation

of what one does not know to be true is unjustifiable, and if another act upon the faith of it he who induced the action must suffer, and not the other. (*Borders v. Kattleman*, 142 Ill. 96, 103; *Noll v. Peterson*, 338 Ill. 552, 556; *Owens v. Union Bank of Chicago*, 260 Ill. App. 595, 600.) And a party selling property is presumed to know whether the representations he affirmatively makes in respect to it are true or false. If he knows them to be false it is a positive fraud, and if he makes them without knowing them to be true for the purpose of inducing another to act upon them, it in equity amounts to fraud. (*Cooper v. Empire Security Co.*, 227 Ill. App. 161, 175; *Rowe v. Phillips*, 214 Ill. App. 582, 598.) Good faith is no defense where the fraud and deceit practiced consist of making false statements of fact as of the knowledge of the one speaking, for if one asserts a thing to be true of his own knowledge when it is not true, or when he does not in fact know whether it is true or not, his statement that he knows it to be true of his own knowledge is false whether the fact asserted is true or not. And if a person makes a positive statement that a thing that is susceptible of knowledge is true it is implied that he knows it to be true of his own knowledge, and if he has no such knowledge, he is guilty of actual fraud. (*National Bank of Pawnee v. Hamilton*, 202 Ill. App. 516, 526. Certiorari denied by the Supreme Court.) In a bill for rescission the question whether the vendee intentionally falsified is immaterial. It is enough that the representation was contrary to fact, was material, was made to induce the vendee to act, and was actually relied and acted upon by the vendee to his injury. (*Independent Harvester Co. v. Tinsman*, 253 Fed. 935, 937), and equity will, in a proper case, avoid and set aside a transaction induced or procured through material misrepresentations although the statements and

representations were honestly made with no intent to deceive. (*Leary v. Geller,* 224 N. Y. 56, 58.)

The appellees also argue that no representation of genuineness was made or reliance placed on any one's representation as to the genuineness of the certificates, and that the statement made by the Elsenau Company to the bank was not a representation from which any equity arises. The argument is not based on the facts as we understand them. The undisputed evidence discloses that when the Elsenau Company delivered the 20 certificates to the bank it stated they were certificates for 1,000 shares of Fox Film Corporation class "A" common stock, and the bank relying on said statement accepted the certificates, believing the statement to be true and not knowing to the contrary, and the bank would not have made the loan had it known the certificates were forged.

The appellees further argue that the representations were made honestly, upon a reasonable belief in their truth; in other words Elsenau Company was mistaken in representing the certificates were genuine. Even so, relief will be granted from the consequence of a mistake of fact which is material to the transaction, affecting its substance, which, in itself, is so important that it determines the conduct of the parties. (*Hoops v. Fitzgerald,* 204 Ill. 325.) It is undisputed in the instant case that the bank believed and relied on the statement of Elsenau Company that the certificates were certificates for 1,000 shares of Fox Film Corporation class "A" common stock, and that the bank would not have made the loan had it known the certificates were spurious. The statement was material to the transaction, affected its substance, and was so important that it determined the conduct of the bank, and it would be inequitable and unconscientious for a party to insist on holding the benefit of a contract which he had obtained through misrepresentations,

however innocently made. (*Hammond v. Pennock,* 61 N. Y. 145, 152.)

The appellant bank also contends that it is entitled to rescind the loan and impose a constructive trust or equitable lien on the proceeds of the loan which was deposited with the garnishee. We think there is merit in this contention. Property obtained by one through the fraudulent practice of a third person will be held under a constructive trust for the person defrauded. (*Ruhe v. Ruhe,* 113 Md. 595; *Evans v. Moore,* 247 Ill. 60.) As before stated the loan was obtained by fraud. Under such circumstances the bank had the right to rescind the contract as soon as it discovered the fraud practiced upon it, and reclaim the money from anyone not an innocent purchaser for value. (*Doane v. Lockwood,* 115 Ill. 490; *Schweizer v. Tracy,* 76 Ill. 345.) It is an established principle of equity that one will not be permitted to derive any benefit from his own fraud (*Miller v. Miller,* 266 Ill. 522, 531), and equity will raise a constructive trust, even where there is no fraud, whenever the circumstances of the transaction are such that the person who takes the legal estate may not enjoy the beneficial interest therein, as against the other party to the transaction, without violating some established principle of equity (*Englestein v. Mintz,* 345 Ill. 48, 56; *Harrison ·v. Tierney,* 254 Ill. 271), and no change in the state or form of the trust property can divest it of the trust, so long as it can be identified, either as the original property of the *cestui que trust* or as the product of it. (*Woodhouse v. Crandall,* 197 Ill. 104, 111; *Farmers' and Mechanics' Nat. Bank v. King,* 57 Pa. St. 202.) Even in case of money, which is said to have no earmark, its identity will not be lost, though it is mingled with other money of the wrongdoer, if it can be shown that it forms a part of the general mass (*American Sugar Refining Co. v. Fancher,* 145 N. Y. 552, 557; *Third Nat. Bank of St. Paul v. Stillwater Gas Co.,* 36 Minn. 75; *Lewis v. Equitable*

*Mortgage Co.,* 94 Ga. 572), and the *cestui que trust* may pursue the proceeds of trust property and charge with the original trust any property in which the proceeds of the trust property have been invested. (*Worrell v. Torrance,* 242 Ill. 64, 68.) The undisputed evidence shows that $11,000 of the fund in the possession of the garnishee is the same fund obtained by Persselli from the bank, by means of the check to his order dated December 20, 1930, drawn by Elsenau Company. The deposit of the $11,000 check by Persselli in his account with the garnishee is equivalent to the deposit of that amount of money. (*Montgomery County v. Cochran,* 121 Fed. 17, 21; *Peterson v. Smith,* 211 Ill. App. 431, 435.)

Our examination of the record and the authorities leads us to the conclusion that the Harris Trust and Savings Bank had the right to rescind the loan made to M. N. Elsenau Company, and is entitled to recover $11,000 of the funds in the hands of The National Bank of the Republic of Chicago, garnishee, and appellees have no right to so much of said fund and M. N. Elsenau Company has no right to any part of said funds. Accordingly the judgment appealed from is reversed and a judgment will be entered in this court against The National Bank of the Republic of Chicago, a corporation, as garnishee, for $11,000 in favor of the Harris Trust and Savings Bank, and for $1,000 in favor of appellees. Appellees to pay all costs in this court.

*Reversed and judgment here against the National Bank of the Republic of Chicago, a corporation, for $11,000 in favor of Harris Trust and Savings Bank, and $1,000 in favor of J. F. Brennan, F. E. Alstrin, C. Groverman Ellis, L. M. Spitzglass, S. B. Ullman, C. C. Taylor, Henry Stefany, L. M. Stein, B. F. Stein, co-partners doing business as Stein, Alstrin & Co. M. N. Elsenau Company to take no part of the funds.*

GRIDLEY, P. J., and SCANLAN, J., concur.