People of the State of Illinois ex rel. John R. O'Connor,
Appellant, v. City of Chicago et al., Appellees.

Gen. No. 40,415.

Opinion filed April 10, 1939.

JOSEPH S. GRANT and SAMUEL GROSSMAN, both of
Chicago, for appellant; HENRY W. KENOE, of Chicago,
of counsel.

BARNETT HODES, Corporation Counsel, for appellees; ARTHUR A. SULLIVAN and J. HERZEL SEGAL, Assistant Corporation Counsel, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the relator seeks to reverse a judgment of the circuit court of Cook county dismissing his petition wherein he prayed that a writ of mandamus issue against the city of Chicago and its officials commanding them to pay $15,000 which was awarded to him in a foreclosure decree against the City. The case was decided by the trial judge on the pleadings and a stipulation that the court might consider all facts properly pleaded as though they were supported by evidence.

The record discloses that on December 8, 1920, an ordinance was passed by the city council for the widening of Ashland avenue, and pursuant thereto a petition to condemn the necessary property was filed February 1, 1921, in the circuit court of Cook county in the usual form. Commissioners were appointed who made up and filed their report and assessment roll on May 24, 1922, describing the property to be taken or damaged, the names and residences of the respective owners of record of such parcels of land, also the names and residences of the occupants, the value of each piece or parcel to be taken, and the amount of damage or benefit, if any, etc. This proceeding involved a great many pieces of property and the record was necessarily voluminous. Defendants were all apparently served as required by the statute, and afterward, August 25, 1926, Hannah E. and Mary McNichols, who owned the property in question, known as 4835-4837 North Ashland avenue, Chicago, executed their trust deed to Russel Firebaugh, trustee, to secure an indebtedness of $80,000. Afterward, August 1, 1928, a judgment of condemnation and of confirmation

was entered by the circuit court of Cook county, in which the McNichols were awarded $640 for the 10 feet which was condemned and were assessed $720 as benefits to the balance of their property.

July 17, 1929, the McNichols executed their quitclaim deed to the 10 feet in question, conveying the property to the city of Chicago for the consideration of $640. The deed also covenanted and warranted to the City that they, the grantors, were "lawfully entitled to receive the entire amount of the award of $640 allowed in case No. B-71140, Circuit court of Cook county . . . as compensation for said lands and improvements thereon taken for public use in said proceeding"; that there were no mechanics' liens or incumbrances against the real estate and that they, the grantors, "will forever warrant and defend" their "right to receive the entire amount of the above award against the lawful claims and demands of all persons."

October 4, 1929, Firebaugh, the trustee, filed his bill to foreclose the trust deed, which apparently was in the usual form, but the City was not made a defendant; a short time thereafter he filed his amended bill in which he set up the conveyance of the 10 feet by the mortgagors, the McNichols, to the city of Chicago. The City was made a defendant and the prayer of the bill was that the court decree that the City pay to the plaintiff trustee a fair and reasonable sum for the 10 feet to be applied on the indebtedness secured by the trust deed. The City filed an appearance but failed to answer and was defaulted. The foreclosure suit was heard before a master who made his report, which is not in the record, and October 10, 1930, a decree of foreclosure was entered. By the decree it was found that Firebaugh was a necessary party to the condemnation proceeding; that he was not made a party and therefore was not bound by that judgment. It was

further found that the City had taken possession of the 10 feet without legal or equitable right thereto, and that the taking "depreciated and reduced the value of the property being foreclosed to the extent of $15,000," and it was decreed that Firebaugh, as trustee recover this amount from the City and that execution issue therefor. Afterward the property was sold under the foreclosure decree for $73,000, the 10 feet was bid in by the trustee for $10 and a deficiency decree of $10,541.46 was entered.

By the petition for a writ of mandamus the relator sought to recover the $15,000 mentioned in the foreclosure decree, together with 5 per cent interest from the date the decree was entered—October 10, 1930—and it is said that this $15,000 with interest thereon when and if collected would be distributed to the bondholders, and that if this were done there would still be something due the bondholders.

In May, 1936, an order was entered by the superior court of Cook county whereby Firebaugh as trustee was removed and the relator, O'Connor, appointed as successor trustee.

In their briefs counsel for the relator in stating the substance of the pleadings, say that defendants in an amendment to their answer, "alleged that the condemnation proceeding was instituted and the commissioners' report and assessment roll filed prior to the execution and recordation of the trust deed, and that the trustee took title subject to *lis pendens* notice."

The relator contends that his decree for $15,000 against the City is "absolutely conclusive in a subsequent proceeding to compel payment"; that in the foreclosure suit the court had jurisdiction over the parties and of the subject matter, and that a court of equity having obtained jurisdiction will do complete justice between the parties even to the extent of en-

forcing legal rights; that in the instant case complainant has a clear legal right to a writ of mandamus and the court erred in dismissing the proceeding.

From the facts we have above stated it is clear that what was done in the foreclosure suit was, to say the least, anomalous and wholly unwarranted. The City had properly instituted the condemnation proceeding, the commissioners had filed their report, the parties including the McNichols had been served with process, so the matter was *lis pendens* before the trust deed was executed. The *lis pendens* begins from the service of summons, and this doctrine or rule of law is founded on public convenience and necessity. *Norris v. Ile,* 152 Ill. 190. In *Moore v. Zelic,* 338 Ill. 583, the court said (p. 589) : *"Lis pendens* means a pending suit. Under the common law, while a suit was pending nothing in relation to the subject matter thereof could be changed, and one acquiring from a party to the proceeding an interest in the property involved in the litigation, where the court has jurisdiction of the subject matter and of the person of the one from whom the interest is acquired, takes such interest subject to the rights of the parties to the litigation as finally determined, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. (*Norris v. Ile,* 152 Ill. 190; 1 Story's Eq. Jur., sec. 406.)"

Before the execution of the trust deed the condemnation proceeding was a pending suit within the meaning of the rule, and the trustee was as conclusively bound by the result of that proceeding as if he had been a party thereto from the outset. The attempt to relitigate the matter in the foreclosure suit was void. The relator being the trustee in the trust deed, if he could in any event have prevented the payment of the $640 to the McNichols, should have intervened in the condemnation suit. But the City was not required to

pay the $640 to anyone, because that was the value fixed in the condemnation suit of the 10 feet taken, while the balance of the property was benefited to the extent of $720, so that $80 was due and owing the City from the owners of the property being condemned. Sec. 16, par. 715, ch. 24, p. 525, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 76.021].

The decree against the City for 15,000 entered in the foreclosure suit was wholly unwarranted and void. The judgment of the circuit court refusing to issue a writ of mandamus and dismissing the petition was the only judgment the record warranted, and it is affirmed.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.